**NATIONAL CITY BANK OF INDIANA, Appellant,**

v.

**ALL–PHASE ELECTRICAL SUPPLY CO., Appellee.**

No. 20A03–0211–CV–380.

Court of Appeals of Indiana.

May 20, 2003.

Publication Ordered June 18, 2003.

Michael A. Trippel, Jamie C. Woods, Jacob S. Frost, Thorne Grodnick, Mishawaka, IN, Attorneys for Appellant.

Sue Figert Meyer, R. Brock Jordan, Rubin & Levin, Indianapolis, IN, Attorneys for Appellee.

## OPINION

KIRSCH, Judge.

National City Bank of Indiana ("National City") appeals the trial court's decision to grant All–Phase Electrical Supply Co.'s ("All–Phase") motion for summary judgment, raising the following issue for review: whether the trial court erred in determining that, as between the parties, All–Phase, a material supplier to the subcontractor, had a better claim to the interpled funds deposited by the general contractor where National City held a security interest in the bankrupt subcontractor's assets, including accounts receivable, and All–Phase served notices of personal liability on the contractor and the owners in accordance with IC 32–8–3–9 (now IC 32–28–3–9) and IC 36–1–12–12.

We affirm.

## FACTS AND PROCEDURAL HISTORY

Almac–Sotebeer, Inc. ("Almac") was the general contractor for two construction projects. One of the owners of the projects was a public entity; the other was private. Almac hired Robison Electric, Inc. ("Robison") as a subcontractor for the projects. All–Phase supplied Robison with supplies and materials for the projects. National City was Robison's creditor and held a perfected security interest in many of Robison's assets, including its accounts receivable.

Robison failed to pay All–Phase for the materials for the projects. Accordingly, All–Phase submitted its notices of Nonpayment and Personal Liability of Owner to the project owners and Almac. Subsequently, the project owners paid Almac. Robison filed bankruptcy, and both All–Phase and National City claimed an interest in the funds held by Almac. Almac interpled the funds into court and filed an interpleader action for a determination of the rightful ownership of the funds. Both All–Phase and National City intervened and filed motions for summary judgment, and the trial court determined that All–Phase was entitled to the funds. National City now appeals.

## DISCUSSION AND DECISION

■ National City appeals the grant of summary judgment in favor of All–Phase and the denial of its motion for summary judgment. The fact that the parties filed cross-motions for summary judgment does not alter our standard of review. *American Family Ins. Co. v. Globe American Cas. Co.*, 774 N.E.2d 932, 935 (Ind.Ct.App. 2002), *trans. denied* (2003). When reviewing the grant or denial of a summary judgment motion, this court applies the same legal standard as the trial court, i.e., summary judgment is appropriate when no designated genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law. *Indiana Ins. Co. v. Am. Cmty. Servs., Inc.*, 718 N.E.2d 1147, 1152 (Ind.Ct.App.1999); *May v. Frauhiger*, 716 N.E.2d 591, 594 (Ind.Ct. App.1999) (citing Ind. Trial Rule 56(C)); *Birrell v. Indiana Auto Sales & Repair*, 698 N.E.2d 6, 7 (Ind.Ct.App.1998), *trans. denied*.

All–Phase gave notice pursuant to IC 32–8–3–9 (now IC 32–28–3–9) and IC 36–1–12–12. IC 32–28–3–9 provides that if a subcontractor gives notice of its claim to the owner, it may recover the amount of the claim from the owner if, after the amounts of other claims that have priority are subtracted from the amount due from the property owner to the contractor, the remainder of the amount due from the property owner to the contractor is sufficient to pay the amount of the subcontractor's claim. This "personal liability statute" provides a procedure for subcontractors, workers employed by others, and persons who lease materials or machinery for construction projects to establish liability on the part of the owner of the project for the amount owed to such subcontractors, workers, and persons by their respective contractors, employers, and lessees. *Mercantile Nat'l Bank of Indiana v. First Builders of Indiana, Inc.*, 774 N.E.2d 488, 490 (Ind.2002).

Similarly, IC 36–1–12–12 allows subcontractors on public works projects to obtain payment directly from the owner if the contractor fails to pay them provided they give notice of their claim within sixty days of performing the work or supplying the materials. This statute provides for the payment of contractors, laborers, material suppliers, and those who perform services for public work projects. *Wallem v. CLS Indus., Inc.*, 725 N.E.2d 880, 887 (Ind.Ct. App.2000).

■ All–Phase properly complied with these statutes. However, compliance does not result in the creation of a mechanic's lien. *See McCorry v. G. Cowser Constr., Inc.*, 644 N.E.2d 550 (Ind.1994). Rather, the purpose of the personal liability law is to place the subcontractor in the place that the general contractor would have occupied in a lawsuit with the owner. *Mercantile Nat'l Bank*, 774 N.E.2d at 492 (quoting *Coplay Cement Co., Inc. v. Willis & Paul Group*, 983 F.2d 1435, 1437 (7th Cir.1993)).

National City contends that this position is not superior to its rights as a perfected security interest holder. All–Phase counters that National City's security interest in Robison's accounts receivable was not perfected because it had not yet attached.

■ For a security interest to be effective against third parties, it must have attached to the collateral and be perfected. *Pioneer Hi–Bred Int'l, Inc. v. Keybank Nat'l Ass'n*, 742 N.E.2d 967, 970–71 (Ind. Ct.App.2001). A security interest attaches to collateral when it becomes enforceable against the debtor with respect to the collateral. IC 26–1–9.1–203(a). A security interest is enforceable against the debtor and third parties with respect to the collateral if value has been given, the debtor has rights in the collateral, and the debtor has authenticated a security agreement describing the collateral. IC 26–1–9.1–203(b). Comment 6 to IC 26–1–9.1–203 explains that attachment is conditioned on the debtor's having rights in the collateral or the power to transfer rights in the collateral to a secured party and explains that a security interest attaches only to whatever rights a debtor may have, broad or limited as those rights may be. As one court has explained with regard to accounts receivable:

"A debtor has no rights in an accounts receivable until the debt is owed. In other words, a security interest in an accounts receivable cannot be perfected until it has attached by means of the debtor having delivered goods or performed services which cause the account to come into existence."

*Int'l Underwriters, Inc. v. Kinnamon*, No. 7350, at *4 (Del. Ch. Sept. 25, 1984) (citations omitted), *aff'd* 513 A.2d 1318 (Del. 1986).

Here, Robison had already performed the services creating the obligation for Almac to pay. Thus, Robison had a right to payment to which National City's security interest could attach. However, Robison's accounts receivable had no value because All–Phase, by giving notice of personal liability, acquired the rights that Almac had to the funds from the owner. Thereafter, Robison, and concomitantly, National City, had no claim to the funds held by Almac. Rather, All–Phase was entitled to the funds that Almac held. The trial court did not err in granting All–Phase's motion for summary judgment.

Affirmed.

SULLIVAN, J., and SHARPNACK, J., concur.

### ORDER

This Court having heretofore handed down its opinion in this cause on May 20, 2003, marked Memorandum Decision, Not for Publication;

Comes, now the Appellee, by counsel, and files herein Motion to Publish Memorandum Decision, alleging therein that said decision clarifies the rule of law that a security interest in an accounts receivable cannot be perfected until it has been attached by means of the debtor having delivered goods or performed services which caused the account to come into existence; that said decision is of particular importance to commercial litigators, secured

lenders, and those entities performing services in construction industry and prays this Court to publish said Memorandum Decision.

The Court having examined said Motion, having reviewed its opinion in this case and being duly advised, now finds that said Motion should be granted.

IT IS THEREFORE ORDERED that upon the above-recited Motion, this Court's opinion heretofore handed down in this cause on May 20, 2003, marked Memorandum Decision, Not for Publication is now ordered published.